Gary TRUITT, Plaintiff,

v.

DOYON DRILLING, INC., Defendant.

Case No. 3:08–cv–0020–TMB.

United States District Court,
D. Alaska.

June 17, 2010.

───────

Andrew M. Lebo, Law Office of Andrew M. Lebo, Michael T. Stehle, Law Office of Michael Stehle, Anchorage, AK, for Plaintiff.

Robert K. Stewart, Jr., Davis Wright Tremaine LLP, Anchorage, AK, for Defendant.

*ORDER*

Granting Plaintiff's Motion for Partial Summary Judgment and Denying Defendant's Motion for Partial Summary Judgment

TIMOTHY M. BURGESS, District Judge.

## I. INTRODUCTION

At Docket No. 26, Defendant Doyon Drilling, Inc. ("Defendant") moved for partial summary judgment on the Family and Medical Leave Act ("FMLA") claims asserted by Plaintiff Gary Truitt ("Plaintiff"). Plaintiff opposes Defendant's request and cross-moved for partial summary judgment, requesting the Court find Defendant violated the FMLA.[1] For the reasons outlined below, the Court **DENIES** Defendant's motion and **GRANTS** Plaintiff's motion for partial summary judgment.

## II. BACKGROUND

On December 28, 2007, Gary Truitt initiated this lawsuit by filing a complaint alleging claims for violation of the Family and Medical Leave Act, the Age Discrimination in Employment Act and the Alaska Human Rights Act.[2] Prior to initiating the lawsuit, Mr. Truitt was employed by Defendant Doyon Drilling as a mechanic and worked a two weeks on, two weeks off rotation.

In 2006 Mr. Truitt suffered from two serious medical conditions which caused him to be absent from work. In January 2006, Mr. Truitt sustained a foot infection and, as a result, could not attend work from January 23, 2006 until March 10, 2006. Secondly, in June 2006, Mr. Truitt suffered a heart attack and underwent emergency cardiac arterial bypass graft surgery on June 23, 2006. Consequently, Mr. Truitt did not attend work on June 22, 2006 and was not medically cleared to resume his employment until October 2, 2006. According to the complaint, Defendant terminated Mr. Truitt on or about June 30, 2006.[3] Thereafter, Plaintiff applied to be reinstated as a mechanic with Defendant on September 29, 2006 and Defendant denied his request.

## III. LEGAL STANDARD

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment in its favor as a matter of law.[4] The moving party bears the initial burden of proof as to each material fact upon which it has the burden of persuasion at trial.[5] This requires the moving party to establish, beyond controversy, every essential element of its claim or defense.[6] "When the party moving for summary

---

1. Dkt. 30.

2. Dkt. 1.

3. Dkt. 1.

4. Fed.R.Civ.P. 56(c).

5. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

6. *S. Calif. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir.2003).

judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the same evidence were to be uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."[7]

Once the moving party has met its burden, the nonmoving party must demonstrate that a genuine issue of material fact exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial.[8] The court must view this evidence in the light most favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party.[9]

## IV. DISCUSSION

The Family and Medical Leave Act provides that eligible employees are "entitled to a total of 12 workweeks of leave during any 12–month period" if "[b]ecause of a serious health condition ... the employee [is] unable to perform the functions of [his or her employment] position."[10]

Plaintiff contends that, as of October 2, 2006, he had not exhausted the twelve weeks of leave time provided under the Family and Medical Leave Act. To calculate FMLA leave time, Plaintiff argues that Defendant may only reduce Plaintiff's FMLA leave entitlement for those weeks that Plaintiff was scheduled to report to work. Accordingly, Plaintiff concludes that "under the plain language of the FMLA and its interpreting regulations, if an employee is not scheduled to report to work, the time period involved may not be counted as FMLA leave time as a matter of law."[11]

In contrast, Defendant argues that Plaintiff's FMLA leave entitlement expired on July 31, 2006.[12] In calculating Plaintiff's FMLA leave period, Defendant counted each calendar week that Plaintiff was absent, regardless of whether Plaintiff was scheduled to work. As a result, Defendant counted the approximately two weeks per month that Plaintiff was not scheduled to report for duty in reducing Plaintiff's FMLA leave time.[13] Utilizing this calculation method, Defendant concluded that Plaintiff's available FMLA leave expired before Plaintiff was medically certified to resume his employment on October 2, 2006.

In moving for partial summary judgment, Plaintiff contends that Defendant violated the FMLA by applying its calendar week analysis to a rotational employee. In response, Defendant moved for an order finding that Defendant lawfully counted each calendar week in calculating Plaintiff's FMLA leave entitlement. Therefore, to determine whether either party is entitled to partial summary judgment, the Court must determine the proper method for calculating FMLA leave for an employee working a two weeks on, two weeks off rotational schedule.

The Court finds that Congress has not "directly spoken to the precise question" of how to calculate FMLA leave entitlement

---

**7.** *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rest., Inc.,* 213 F.3d 474, 480 (9th Cir.2000); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**8.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**9.** *Id.* at 225, 106 S.Ct. 2505; *Soldano v. United States,* 453 F.3d 1140, 1143 (9th Cir.2006).

**10.** 29 U.S.C. § 2612(a)(1)(D).

**11.** Dkt. 30 at 3.

**12.** *Id.*

**13.** Dkt. 27 at 8.

for a rotational employee.[14] Accordingly, the FMLA is ambiguous or silent with respect to this particular issue. However, any ambiguity in interpreting Section 2612(a)(1)(D) of the FMLA is dispelled by the preamble accompanying and explaining the regulation. The preamble unequivocally states: "An employee's FMLA leave entitlement may only be reduced for time which the employee would otherwise be required to report for duty, but for the taking of leave. If the employee is not scheduled to report for work, the time period involved may not be counted as FMLA leave."[15] In the preamble the Department of Labor noted that "an absence taken when the employee would not otherwise be required to report for duty is not leave, FMLA or otherwise."[16]

The Department of Labor promulgated the preamble to the final FMLA regulations pursuant to its authority to "prescribe such regulations as are necessary to carry out" Title I and Title IV of the FMLA.[17] The preamble contains the Department of Labor's official interpretation of the Act and must be upheld "if it is based on a permissible construction of the statute."[18] Deference is generally accorded to an federal agency's interpretation of its regulations "based in part on the expertise [the agency] possesses in implementing federal policy in the general subject area."[19] Additionally, federal agencies such as the Department of Labor "are also entitled to deference because their activities are subject to continuous congressional supervision by virtue of Congress's powers of advice and consent, appropriation, and oversight."[20]

Therefore, the Court must grant deference to the Department of Labor's interpretation unless it is arbitrary, capricious or manifestly contrary to the statute.[21] The agency's interpretation would be arbitrary and capricious if it conflicted with the statute or if the "agency . . . relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of the agency's expertise."[22]

 The Court finds the Department of Labor's statement—that an employee's FMLA leave time may not be reduced by periods the employee is not scheduled to work—is a permissible construction of the Act.[23] The Department of Labor's interpretation sensibly conforms to the purpose and language of the regulation and is not clearly erroneous. Therefore, the Court accords deference to the Department of Labor's interpretation of § 2612(a)(1)(D)

**14.** *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

**15.** 60 Fed.Reg. 2203 (1995).

**16.** 60 Fed.Reg. 2229 (1995).

**17.** 29 U.S.C. § 2654.

**18.** *Id.* at 843, 104 S.Ct. 2778.

**19.** *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1192 (9th Cir.2000).

**20.** *Kenaitze Indian Tribe v. State of Alaska*, 860 F.2d 312, 316 (9th Cir.1988).

**21.** *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 158 fn. 13, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) ("we look to the preamble . . . for the administrative construction of the regulation, to which deference is clearly in order"); *Henderson v. Stanton*, 76 F.Supp.2d 10, 15–16 (D.D.C.1999)("The preamble, which gives official interpretive guidance to the regulation, should be accorded due deference unless clearly erroneous or contrary to the terms of the regulation")

**22.** *Yakutat, Inc. v. Gutierrez*, 407 F.3d 1054, 1067 (9th Cir.2005).

**23.** 60 Fed.Reg. 2203 (1995).

of the Family and Medical Leave Act. In calculating Plaintiff's available FMLA leave entitlement, Defendant may only deduct the workweeks that Plaintiff was scheduled to report for duty but was unable to do so because of a serious health condition.

Defendant contends that this position is contrary to the approach adopted by the court in the unpublished opinion *Button v. Alaska Petroleum Contractors.*[24] In that case, the court concluded that, in calculating FMLA leave time for a rotational employee, "the proper approach is to add the total hours worked during the entire on/off cycle, then divide by the length of the cycle to come up with the average number of hours per week, and finally multiply by 12 to determine the FMLA leave entitlement measured in work hours ... In effect, this means that the 'off' weeks do count toward the 12 weeks of FMLA leave."

The Court respectfully disagrees with the *Button* decision for several reasons. First, the opinion in *Button* failed to consider the Department of Labor's statements in the preamble to the FMLA. Secondly, the court in *Button* relied upon 29 C.F.R. § 825.205(d) in formulating its conclusion. However, this Section is applicable to employees whose "schedule varies from week to week."[25] Recent regulations clarify that Section 825.205(d) only applies if "an employee's schedule varies from week to week to such an extent that an employer is unable to determine with any certainty how many hours the employee

would otherwise have worked (but for the taking of FMLA leave)."[26] In the present case, Plaintiff's expected work schedule was known. Indeed, the parties have stipulated to Plaintiff's two week on, two week off rotation. There is no need to use the calculation provided in Section 825.205(d) to determine Plaintiff's hypothetical work schedule. Lastly, Section 825.205(d) only provides for intermittent or reduced schedule leave. This Section is inapplicable in the present case as Plaintiff took consecutive leave after suffering serious health conditions.[27] In light of the foregoing, the Court finds that the *Button* decision is not controlling and declines to follow it.

Defendant also argues that Plaintiff's FMLA leave must be calculated according to its payroll and accounting practice of scheduling workweeks to begin on Monday at 12:00 a.m. and end on the following Sunday at 11:59 p.m.[28] Although Defendant admits that Plaintiff worked a two weeks on, two weeks off rotation, it contends that Plaintiff's rotation occurred over three of Defendant's Monday through Sunday workweeks. Utilizing this calculation Defendant concludes that Plaintiff's FMLA leave expired on or about September 3, 2006.[29] The Court finds that Defendant's workweek calculation is contrary to the position adopted by the Department of Labor, contravenes 29 C.F.R. § 825.200(b), and is not supported by the text of the FMLA.

First, if the Court adopted Defendant's workweek calculation Plaintiff would be

---

**24.** *Button v. Alaska Petroleum Contractors, Inc. et al.,* Case No. A99–0084 CV (D.Alaska 2000) (unpublished).

**25.** 29 C.F.R. § 825.205(d).

**26.** 29 C.F.R. § 825.205(b)(3). *Nat'l Labor Relations Bd. v. Bell Aerospace Co. Div.,* 416 U.S. 267, 274, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974)(an amendment of a regulation may be

evidence of the legislative intent underlying the earlier form of the regulation).

**27.** 29 C.F.R. § 825.200(f) is the applicable section for determining availability of continuous leave.

**28.** Dkt. 27 at 2.

**29.** Dkt. 27 at 10.

charged FMLA leave time for periods when Plaintiff was not scheduled to work. Defendant's workweek definition would effectively change Plaintiff's two weeks on, two weeks off rotation to a three weeks on, one week off schedule. In accordance with this schedule, during each rotation Plaintiff would be charged six days of FMLA leave time for periods that Plaintiff was not required to report to work. Therefore, Defendant's position conflicts with the Department of Labor's position as stated in the preamble. Indeed, the Department of Labor addressed this precise issue in formulating the preamble, noting: "The Society for Human Resource Management questioned how a week of FMLA leave would be counted for employees who work seven days and then are off for seven days. An employee's FMLA leave entitlement may only be reduced for time which the employee would otherwise be required to report for duty, but for the taking of the leave." [30] In contrast to Defendant's position, the Department of Labor did not calculate whether the employee's seven week rotation corresponded to the employer's payroll and accounting practice of scheduling workweeks.

Secondly, Defendant's workweek definition contravenes 29 C.F.R. § 825.220(b), which prohibits an employer from "interfering with, restraining, or denying the exercise of rights provided by the act. 'Interfering with' the exercise of an employee's rights would include ... manipulation by a covered employer to avoid responsibilities under the FMLA." If the Court were to adopt Defendant's workweek definition, employers would be permitted to define their workweeks and schedule their employees' rotations to reduce the amount of FMLA leave their employees are entitled. Similarly, Plaintiff would be deprived of the FMLA leave that has been conferred to him under the Act.

Third, Defendant's suggestion that an employer may define its workweek according to accounting and payroll policies rather than an employee's actual schedule is not supported by the text or purpose of the FMLA. Defendant acknowledges that Plaintiff worked a two weeks on, two weeks off rotation. During his work rotation, Plaintiff worked as a mechanic for 12 hours a day for 14 days in a row. Defendant's theory that Plaintiff actually worked three weeks on, and one week off is at odds with the facts and violates the FMLA.

In light of the foregoing, the Court concludes that Plaintiff had not exhausted his FMLA leave entitlement by the time he was medically certified to resume employment on October 2, 2006. Accordingly, the Court grants Plaintiff partial summary judgment on this issue.

■ Lastly, the Court finds that Defendant's failure to advise Plaintiff of his rights under the FMLA on June 22, 2006 violated the Act. Pursuant to the regulations imposed by the Department of Labor, an employee is obligated "to communicate with employees regarding their rights under the FMLA. In particular, the regulations require employers to provide employees with individualized notice of their FMLA rights and obligations." [31] As a result, each time an employee requests leave, the employer is required within a reasonable time thereafter to "provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." [32]

---

30. 60 Fed.Reg. 2203 (1995).

31. *Conoshenti v. Pub. Serv. Elec. & Gas Co.,* 364 F.3d 135, 142 (3rd Cir.2004).

32. 29 C.F.R. § 825.301.

Both parties concede that Defendant did not inform Plaintiff of his rights under the FMLA on or after June 22, 2006.

Defendant contends that, under the FMLA, written notice of an employee's right to leave "must be provided to the employee no less often than the first time in each six-month period that an employee gives notice of the need for FMLA leave."[33] Defendant provided Plaintiff with notice of his FMLA leave entitlement in conjunction with his first injury on January 24, 2006. Therefore, Defendant argues that it was not required to provide Plaintiff with a second notice of his FMLA rights five months later on June 22, 2006.[34]

However, the FMLA provides that "if the employer is requiring medical certification or a 'fitness-for-duty' report, written notice of the requirement shall be given" regardless of whether the employee had received a general FMLA notice within the prior six months.[35] Both parties concede that Plaintiff was required to obtain medical clearance before resuming his employment on October 2, 2006. Defendant's January 24, 2006 notice did not "clearly provided that certification or a 'fitness-for-duty' report would be required (e.g., by stating that certification would be required in all cases, by stating that certification would be required in all cases in which leave of more than a specified number of days is taken, or by stating that a 'fitness-for-duty' report would be required in all cases for back injuries for employees in a certain occupation)."[36] Rather, Defendant's January 24, 2006 notice merely provided that "[e]mployees whose leave has been medically necessary because of their own serious health condition *may* be required to provide a fitness-for-duty report as a condition of their return to work."[37] As a result, the Court concludes that the prior notice was not sufficient to satisfy Defendant's obligation to provide Plaintiff with notice of his FMLA leave entitlement.

Plaintiff may not prevail on its claim that Defendant failed to notify him of his FMLA entitlement on or after June 22, 2006 unless Plaintiff can demonstrate that he "has been prejudiced by the violation."[38] Plaintiff may establish prejudice by showing that Defendant's "failure to advise rendered him unable to exercise [his rights under the FMLA] in a meaningful way, thereby causing injury."[39]

The Court finds that Plaintiff was prejudiced by Defendant's failure to advise him of his FMLA entitlement. If Defendant had properly calculated Plaintiff's FMLA time, Plaintiff would have had sufficient leave to allow him to be absent from work until he was fully recuperated on October 2, 2006. Defendant's failure to inform Plaintiff of his rights under the FMLA prevented Plaintiff from calculating his leave properly and in an informed manner. Accordingly, the Court grants Plaintiff's partial summary judgment as to his claim that Defendant failed to advise Plaintiff of his rights under the FMLA.

## V. CONCLUSION

For the reasons outlined above, the Court **DENIES** Defendant's motion at Docket No. 26 and **GRANTS** Plaintiff's

33. 29 C.F.R. § 825.301(c).

34. Dkt. 31, Ex. 7.

35. 29 C.F.R. § 825.301.

36. 29 C.F.R. § 825.301(c)(2)(ii).

37. Dkt. 31, Ex. 7 at 5 (emphasis added).

38. *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 90, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002).

39. *Reifer v. Colonial Intermediate Unit 20,* 462 F.Supp.2d 621, 638 (M.D.Pa.2006).

motion for partial summary judgment at Docket No. 30.